**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arlen Vincent Dagley, | No. CV-20-01370-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Arlen Vincent Dagley's Applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 22). Defendant SSA filed an Answering Brief (Doc. 25), and Plaintiff filed a Reply (Doc. 29). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 21) and reverses the Administrative Law Judge's ("ALJ") decision (AR at 13-21) and remands this matter for calculation of benefits for the reasons addressed herein.

## I.     Background

Plaintiff filed an Application for SSI and SSDI benefits on September 20, 2016, alleging a disability beginning on January 2, 2016. (AR 13). ALJ Ted W. Armbruster issued a decision denying Plaintiff's Application on June 25, 2019. (*Id.* at 13-21). Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed. (Doc. 1).

1   After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's
2   disability claim based on the severe impairments of bipolar disorder and mood disorder.
3   (AR 15). While the ALJ noted that Plaintiff's severe impairments limited his ability to
4   perform basic work activities, the ALJ determined that Plaintiff had the residual functional
5   capacity ("RFC") to perform a full range of work at all exertional levels, but with a number
6   of limitations. (*Id.* at 17).

7   Plaintiff argues that the ALJ erred in rejecting the opinions of treating provider,
8   Dr. Michael F. Warden, Ph.D., without giving specific and legitimate reasons for doing so.
9   Plaintiff also argues the ALJ erred in failing to consider or assign any weight to the opinions
10  of treating nurse practitioner, James Milacek, P.M.H.N.P ("Nurse Milacek"), and in
11  rejecting his symptom testimony in the absence of clear and convincing reasons for doing
12  so. (Doc. 22). The Commissioner argues that the ALJ's opinion is free of harmful error and
13  must be affirmed. (Doc. 25). The Court has reviewed the medical record and will discuss
14  the pertinent evidence in addressing the issues raised by the parties.

## II.     Legal Standards

16  An ALJ's factual findings "shall be conclusive if supported by substantial
17  evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the
18  Commissioner's disability determination only if it is not supported by substantial evidence
19  or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial
20  evidence is relevant evidence that a reasonable person might accept as adequate to support
21  a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is
22  susceptible to more than one rational interpretation, one of which supports the ALJ's
23  decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954
24  (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision,
25  the district court reviews only those issues raised by the party challenging the decision. *See*
26  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

27  To determine whether a claimant is disabled for purposes of the Act, the ALJ
28  follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.   Analysis

Plaintiff argues that the ALJ erred in rejecting the opinions of treating provider, Dr. Michael F. Warden, Ph.D., without giving specific and legitimate reasons for doing so. Plaintiff also argues the ALJ erred in failing to consider or assign any weight to the opinions of treating nurse practitioner, James Milacek, P.M.H.N.P, and in rejecting his symptom testimony in the absence of clear and convincing reasons for doing so. (Doc. 22). The Court will address these issues in turn.

### A.   Medical Opinions

When evaluating medical opinion evidence in cases filed prior to March 27, 2017, "[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, opinions of treating physicians are entitled to the greatest weight; opinions of examining, non-treating physicians are entitled to lesser weight; and opinions of non-examining physicians are entitled to the least weight. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).[1] While greater weight is generally afforded to treating physicians, a "treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir. 1989).

When examining doctors "provide independent clinical findings that differ from the findings of the treating physician, such findings are themselves 'substantial evidence.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (*quoting Orn*, 495 F.3d 625, 632) (other citations omitted). "As is the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester*, 81 F.3d at 830–31. "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

An ALJ meets the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). This means that an ALJ must "do more than state conclusions." *Id.* Rather, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." (*Id.*). The Ninth Circuit requires this exacting standard "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" (*Id.*) (*quoting Orn*, 495 F.3d at 633). The Court will not reverse for an error that

---

[1] The regulations provide that the amount of weight given to any medical opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–404.1527(c)(6).

is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

### 1.   Dr. Warden

Dr. Warden, a psychiatrist, began treating Plaintiff in 2012. (AR 482). Dr. Warden completed multiple medical questionnaires in this case. Dr. Warden completed his first medical assessment on November 10, 2016. (*Id.* at 394-97). Dr. Warden opined that Plaintiff had severe impairments in the abilities to: maintain attention and concentration without interruptions from psychologically based symptoms; sustain an ordinary routine without supervision; work in coordination with or proximity with others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Warden opined that Plaintiff had average intellectual function, but regular disruption because of tangential thoughts and manic thought processes. (*Id.* at 483). Dr. Warden opined that Plaintiff would miss work once per month as a result of his impairments.

Dr. Warden completed an updated assessment in March 2019, wherein he opined that Plaintiff had impairments that would preclude the ability to perform work functions 11 to 20 percent of an eight-hour workday. He concluded that Plaintiff would miss two to three days of work per month due to these impairments. (*Id.* at 505). At the hearing, the Vocational Expert ("VE") testified that the limitations opined by Dr. Warden would preclude Plaintiff from all work. (*Id.* at 74-78).

Here, while the ALJ did not assign a specific weight to Dr. Warden's opinions, the ALJ concluded that the evidence of record did not support the "severe nature" of

Dr. Warden's limitations. (AR 19). The ALJ discussed treatment notes which reflected Plaintiff "spending time with friends and going with them to Prescott." (AR 19). The ALJ also stated Plaintiff's reports of working on music recordings were inconsistent with Dr. Warden's opinions. (*Id.*) The ALJ concluded this section by stating that Plaintiff had waxing and waning symptoms, his mental examinations were consistently normal and did not reflect symptoms to the degree opined by Dr. Warden. The ALJ did not cite to any portion of the record for these findings.

As an initial matter, the ALJ did not explain how Plaintiff's waxing and waning symptoms and his generally unremarkable mental status examinations would be inconsistent with the limitations imposed by Dr. Warden. Nor is there any discussion in the opinion about how a person with bipolar disorder would fare on a mental status examination. As the Ninth Circuit has previously discussed, the presence of waxing and waning of symptoms and symptom improvement do not necessarily indicate an ability to maintain employment, nor do some symptoms improving negate a treating provider's opinions. However, the key requirement in this scenario is for the ALJ to explain why evidence of improvement in certain areas negates the opinions of a providers. *Desiderio v. Comm'r of Soc. Sec. Admin*., No. CV-17-04058-PHX-BSB, 2019 WL 549458, at *7 (D. Ariz. Feb. 12, 2019) (remanding for an award of benefits where "the ALJ did not explain why evidence of improvement [ ] undermined Dr. Neufeld's opinions regarding Plaintiff's concentration, persistence, and pace in a work setting."); *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (stating that a "[provider's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace"). The ALJ did not so explain here.

Neither does the ALJ give any explanation for his finding that Plaintiff's generally normal mental status examinations were inconsistent with Dr. Warden's opined limitations. Courts have routinely noted that mental status examinations do not measure cognitive

function, and thereby do not contradict findings of cognitive impairments. *Morris v. Berryhill*, 358 F. Supp. 3d 875, 883 (D. Ariz. 2019) ("The Ninth Circuit has pointed out, observations of cognitive functioning during therapy sessions do not contradict [a claimant's] reported symptoms of depression and social anxiety. Similarly, observations as to plaintiff's cognitive functioning do not contradict her reported symptoms of depression and hearing voices."). Here, Dr. Warden's opinions of Plaintiff's work-preclusive symptoms were related to his bipolar disorder, anxious mood, and tangential thought process. (AR 505). The ALJ did not discuss how a normal mental status exam contradicted the findings related to Plaintiff's bipolar disorder, anxious mood, and tangential thought process. And while Plaintiff did report that he was able to visit a friend in Prescott on a single occasion, the ALJ does not discuss how this single visit is inconsistent with any of Dr. Warden's opined limitations.

In giving substantial weight to unnamed state agency reviewers, who opined that Plaintiff could work in jobs that limited him to simple tasks and limited public contact, the ALJ stated that while state agency reviewers are not generally afforded great weight from the outset that they deserve great weight "particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." (AR 18). The ALJ does not cite to any portion of the record here and the Court is unsure of what the ALJ is referring to. Moreover, the Court cannot attempt to guess at what the ALJ meant or make post-hoc rationalizations for this statement. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court finds that the relatively brief discussion of Dr. Warden's work-preclusive opinions, with correspondingly sparse citations to the record, is not an adequate basis to discount the opinion of a treating physician. The ALJ did not support his decision with substantial evidence, and therefore, the Court finds error here. *See Garrison*, 759 F.3d at

1012 (quoting *Reddick*, 157 F.3d at 725) (the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"). Moreover, this was not mere harmless error, as the VE testified that the limitations opined by Dr. Warden would preclude all employment. Therefore, the Court finds harmful error here.

### 2.    Nurse Milacek

Plaintiff next argues that the ALJ erred in failing to evaluate, assign weight to, or even discuss Nurse Milacek's October 2016 assessment that was the basis for the VE to conclude that, if accepted, Plaintiff would be precluded from all work. (Doc. 22 at 14). The Commissioner agrees that the ALJ failed to discuss or assign any weight to Nurse Milacek's opinions. (Doc. 25 at 18). However, the Commissioner argues the ALJ did not need to do so. The Court is not convinced.

Physician's assistants, nurse practitioners, chiropractors, and similar providers are medical professionals, but they are not considered "acceptable medical sources," under the Social Security regulations. 20 C.F.R. § 404.1513(d)(1). Rather, these medical professionals are considered "other sources." *Id*. The distinction between "other sources" and "acceptable medical sources" is significant because only "an acceptable medical source" may be considered a "treating source." 20 C.F.R. §§ 404.1502. Thus, these "other sources" are not entitled to the same deference as "acceptable medical sources." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). However, the ALJ cannot discount testimony from "other sources" without giving "reasons germane to each witness for doing so." *Id*. (citations and internal quotations omitted).

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); 20 C.F.R. § 404.1527(b), (f). The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. *Id*. Those factors include the length of the treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the doctor. 20 C.F.R. § 404.1527(c)(2)–(6). Under certain circumstances, the opinion of a treating provider who is not an acceptable medical source may be given greater weight than the opinion of a treating provider who is—for example, when the provider "has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. § 404.1527(f)(1).

While it is much easier for an ALJ to discount testimony from an "other source," the ALJ committed harmful error in failing to discuss or assign any weight to the assessment of Nurse Milacek, a nurse practitioner. *See Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014) (finding error where ALJ did not recognize that "a nurse practitioner qualified as an 'other source' that can provide evidence about the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work"). Importantly, the record shows that Plaintiff was treated by Nurse Milacek on numerous occasions over multiple years.

Nurse Milacek opined that Plaintiff had severe limitations that would interfere with work-related functions approximately 21% or more of any given workday. (AR 390-93). Nurse Milacek opined that, due to his impairments, Plaintiff would miss work more than three days per month. (*Id.*) The VE testified that the limitations opined by Nurse Milacek would preclude all work. (AR 74-75).

The ALJ did not mention Nurse Milacek in his decision. The Commissioner acknowledges this omission, but argues that the ALJ's failure to discuss this opinion was harmless because "Milacek's opined limitations were generally similar to Dr. Warden's 2019 opined limitations," and therefore, that because the ALJ found Dr. Warden's opinions to be extreme, "the same conclusion would be applicable to Mr. Milacek's opined limitations." (Doc. 25 at 20). The Court cannot make such assumptions. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the Court] to review the

- 9 -

ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Commissioner also argues that any error here was harmless as it is "inconsequential to the ultimate nondisability determination." (Doc. 25 at 21). However, as addressed above, the VE testified that limitations opined by Nurse Milacek would preclude Plaintiff from all work. (AR 74-75). Therefore, this is not mere harmless error as the Commissioner argues. The Court finds harmful error here.

### B.    Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred in discounting his subjective symptom testimony without providing clear and convincing reasons supported by substantial evidence for doing so. (Doc. 22 at 19). The Commissioner argues that the ALJ did not err in discounting Plaintiff's symptom testimony. (Doc. 25).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they

suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [a plaintiff's] level of activity were inconsistent with [a plaintiff's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d at 722 (citations omitted); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

Plaintiff testified that he was unable to work due to symptoms from his various mental health impairments. He stated that he had a difficult time focusing and that he suffered from confusion and memory problems that would prevent his ability to show up to work. He testified to anxiety, panic attacks, and prolonged manic states while working previous jobs. (AR 60-65). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including his own statements and testimony regarding activities of daily living. (*Id.* at 18).

The ALJ first stated, without more, that Plaintiff's testimony was inconsistent with the longitudinal medical record. (AR 17). Next, the ALJ found that Plaintiff was responding well to treatment and generally appeared to have unremarkable mental status examinations. (*Id.* at 18). The ALJ also found that Plaintiff reported to providers that he was doing "good" as a reason to discount his testimony. (*Id.*) Finally, the ALJ discussed Plaintiff's daily activities and concluded that Plaintiff's symptoms were not as severe as alleged. (*Id.*)

As to the ALJ's findings related to Plaintiff's improvements with treatment, the ALJ did not cite to any specific records, but rather cited to five entire groupings of medical records, spanning 170 pages. (*Id.*) Additionally, the ALJ noted that while Plaintiff reported an increase in symptoms at appointments, his mental status exams remained benign. (*Id.*) Plaintiff acknowledges that some of his symptoms improved while others got worse over the course of his treatment history. (Doc. 22 at 23). However, the ALJ does not explain how specific improvements in some symptoms on occasion discredited his symptom testimony. *See Englehardt v. Astrue*, 2012 WL 12878758, at *7 (D. Ariz. Mar. 21, 2012), *aff'd sub nom. Englehardt v. Colvin*, 570 F. App'x 687 (9th Cir. 2014) ("doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."). Nor, as discussed above, does the ALJ make any link between Plaintiff's mental status exams and his reported symptoms. The Court finds that the ALJ's findings here are conclusory.

As to the ALJ's finding that Plaintiff was doing "good," a closer examination of the records cited indicate that Plaintiff followed that statement by saying that he was 'good' "relatively speaking, compared to . . . my absolute breaking point." (AR 70). The Court finds that this was not a legitimate reason to dismiss Plaintiff's symptom testimony as it takes his actual statement out of context.

As to the ALJ's discussion of Plaintiff's activities of daily living, the Court notes that the ALJ did not make any citations to the record throughout the entire paragraph related to Plaintiff's activities of daily living. (AR 18). Plaintiff's activities included caring for personal needs, assisting his father with chores every Friday, walking for exercise, and playing and recording music. (*Id.* at 18). The ALJ also noted that "Plaintiff has his own cell phone, checks his email, and uses Facebook," and that he spent time with family over the holidays. (*Id.*) The ALJ concluded, without citing to any of the record, that Plaintiff's daily activities supported the ALJ's conclusions that Plaintiff could work. The Court cannot meaningfully review this reasoning, as the ALJ does not tie any of these activities—owning a cell phone and spending time with family during the holidays—to any of the work-

preclusive specific symptoms alleged. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review").

The ALJ concludes this section by stating, again without citation to the record, that "the treatment record shows that although he has symptoms, they do not appear to be work preclusive." (AR 18). Overall, the Court cannot make the logical connection between the records cited and the ALJ's conclusions. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)). Moreover, the ALJ's failure to cite to specific areas of the record when making the findings with respect to Plaintiff's symptom testimony, rather than entire groupings of the record, make it difficult for the Court to meaningfully review this determination. Therefore, the ALJ committed harmful error by failing to provide clear and convincing reasons for discounting Plaintiff's credibility.

**IV.   Remand**

Once a court has determined an ALJ's decision contains harmful error, the decision whether to remand a case for additional evidence or for an award of benefits is within the discretion of the court. *Reddick*, 157 F.3d at 728; *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). The Ninth Circuit has also credited as true the medical opinion of "a treating nurse practitioner" as a matter of law. *Garrison*, 759 F.3d at 1022 (9th Cir. 2014). Courts apply the credit-as-true rule and remand for benefits when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the

ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020; see also *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Smolen*, 80 F.3d at 1292. "We have, in a number of cases, stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when all of these conditions are met." *Garrison*, 759 F.3d at 1020.

Regarding the first element of the test, the Court is aware of no outstanding issues that must be further developed before a determination of disability can be made. The Court finds that the record here is fully developed, and further administrative proceedings are unnecessary.

The second element of the test is also satisfied. As discussed at length above, the ALJ failed to provide legally sufficient reasons for giving little weight to treating psychiatrist Dr. Warden's medical opinions and failed to even discuss or give any weight to the opinions of treating nurse practitioner Milacek. Moreover, the ALJ committed harmful error by failing to provide adequate reasons for discounting Plaintiff's subjective symptom testimony, which the Court finds to be consistent with the limitations opined by Dr. Warden and Nurse Milacek.

With respect to the third part of the test, the Court finds the ALJ would be required to find Plaintiff disabled if the rejected opinions were credited as true. Importantly here, the VE testified that, based on the improperly rejected opinions of both Dr. Warden and Nurse Milacek, Plaintiff would not be able to perform any work. (AR 75-78).

Crediting Dr. Warden's and Nurse Milacek's opinions as true, the Court finds that the ALJ would be required to find Plaintiff disabled based on the testimony of the VE. Therefore, the three-part test is satisfied here and, consequently, a remand for an award of benefits is appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.      Conclusion**

For the foregoing reasons, the Court finds the ALJ committed harmful error by failing to provide legally sufficient reasons for assigning little weight to Dr. Warden's opinions, for failing to discuss or assign any weight to the opinions of Nurse Milacek, and in finding Plaintiff's symptom testimony not credible without providing substantial evidence. The Court further finds that based on these errors, and in finding that the credit-as-true elements have been met, remand for an award of benefits is warranted.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED,** and this case is **REMANDED** to the Social Security Administration for an award of benefits. The Clerk of Court is directed to enter judgment accordingly.

Dated this 4th day of February, 2022.

_____
Honorable John J. Tuchi
United States District Judge

- 15 -